WILLIAM W. HUCKINS (Bar No. 201098)
IVAN M. GOLD (Bar No. 121486)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA  94111-4074
Phone:  (415) 837-1515
Fax:  (415) 837-1516

Attorneys for Landlord
Ming Plaza L.P.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>HYMAN FAMILY, L.P., doing business as SUSIE'S DEALS,<br><br>    Debtor. | Case No. 6:11-bk-20827-WJ<br><br>Chapter 11<br><br>**LIMITED OBJECTION TO FIRST OMNIBUS MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION AND BUYER DRLY, INC. FOR AN ORDER AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES, ETC.**<br><br>Date:    October 18, 2011<br>Time:   1:00 p.m.<br>Dept:   Courtroom 302<br>            U.S. Bankruptcy Court<br>            3420 Twelfth Street<br>            Riverside, CA 92501 |

Landlord Ming Plaza, L.P., a California limited partnership ("Landlord"), the lessor of debtor Hyman Family, L.P., doing business as Susie's Deals ("Debtor") with respect to shopping center premises located at Ming Plaza, Bakersfield, California, submits it limited objection to the *First Omnibus Motion of Debtor and Debtor-In-Possession and Buyer DRLY, Inc. For An Order Authorizing The Assumption and Assignment of Executory Contracts and Leases, etc.* [Docket No. 195] ("Assignment Motion").  As discussed below, while the Ming Plaza Landlord does not question the Debtor's business judgment with respect to the assignment of leases to Buyer, the successful purchaser of Debtor's assets, or generally oppose the proposed assignment of leases, the

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

823937.01/SF    OPPOSITION TO DEBTOR'S MOTION TO (A) SELL SUBSTANTIALLY ALL
ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS, ETC.

cure amount asserted with respect to the Ming Plaza Lease is contrary to the amounts agreed upon in the *Stipulation For Assumption and Assignment of Nonresidential Real Property Lease [Ming Plaza, Bakersfield, California]*, filed September 14, 2011 [Docket No. 185] (the "Stipulation") executed by Debtor and buyer/proposed assignee DRLY, Inc. ("Buyer") only two weeks prior to the filing of the Assignment Motion. Further, certain terms of the Asset Purchase Agreement between Debtor and Buyer purport to be contrary to the requirements of Bankruptcy Code section 365 and thus fail to provide Landlord with adequate assurance of future performance, as previously agreed.

## FACTUAL AND PROCEDURAL BACKGROUND

1. On April 1, 2011 ("Petition Date"), Debtor filed its voluntary Chapter 11 petition herein.

2. On or about September 10, 1998, Landlord, as landlord, and Debtor, as tenant, entered into a written Shopping Center Lease (the "Ming Plaza Lease") for retail premises consisting of approximately 3,525 square feet commonly known as 3767 Ming Avenue, Bakersfield, California (the "Premises"), located in the Ming Plaza shopping center, Bakersfield, California. The Ming Plaza Lease was subsequently amended by several written amendments. See Stipulation at recital paragraphs A-E. It cannot be seriously disputed that Debtor's Ming Plaza Lease for the Premises is for premises in a "shopping center," as that term was defined in In re Joshua Slocum Ltd., 922 F.2d 1081, 1087-1089 (3rd Cir. 1990). The Premises have been designated by Debtor as its Store No. 70.

3. On August 16, 2011, Debtor filed its *Motion To (A) Sell Substantially All Assets Outside The Ordinary Course Of Business, (B) Assume and Assign Certain Executory Contracts and Unexpired Leases, and (C) Reject Any Remaining Unexpired Leases and Executory Contracts* [Docket No. 132] ("Sale Motion"), seeking approval for the sale of substantially all of Debtor's assets, and assignment of its remaining retail store leases, to "Debtor's principals, composed of Susie Hyman, Stephen Hyman and David Hyman," subject to overbid. (Debtor's Sale Motion at 3: 17-20.) According to Debtor, it "continue[d] to lose money post-petition" (see Declaration of Stephen M. Hyman supporting Debtor's Sale Motion ["Hyman Declaration"] at ¶ 16) and "it is

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

823937.01/SF

-2-
LIMITED OBJECTION TO FIRST OMNIBUS MOTION FOR AN ORDER
AUTHORIZING ASSUMPTION AND ASSIGNMENT, ETC.

unlikely that the Debtor will have enough cash required to operate pending seeking approval of a disclosure statement and confirmation of a plan thereafter" (Hyman Declaration at ¶ 19), necessitating a sale process.

4. On September 6, 2011, Assignee became the Bankruptcy Court-approved "back-up bidder" for the purchase of substantially all of Debtor's assets pursuant to the Sale Motion. Following the default by the initial winning bidder [see Docket No. 170], Buyer became the purchaser of substantially all of Debtor's assets pursuant to the *Order Granting Motion (A) To Sell Substantially All Assets Outside The Ordinary Course Of Business, etc*., entered September 9, 2011 [Docket No. 180] (the "Sale Order"). Paragraph 28 of the Sale Order provides that its shall not be an adjudication or determination as to issues surrounding the assumption, assignment or rejection of unexpired leases and executor contracts, … which shall be addressed by a separately filed motion or stipulation, and to the extent necessary, additional evidence."

5. The September 7, 2011 Asset Purchase Agreement between Debtor and Buyer by which Buyer acquires substantially all of Debtor's assets, excluding certain claims and causes of action ("Excluded Assets" under Section 1.2.2 of Asset Purchase Agreement) and assume all post-petition obligations of the estate (excluding those of Debtor's professionals) (see Exhibit D to Hyman Declaration). Debtor's remaining leases are to be assumed and assigned to Buyer, with Buyer paying all cure amounts, many of which have been the subject of negotiated lease modifications. (Hyman Declaration at ¶ 21.)

6. Debtor, Buyer and Landlord thereafter entered into their Stipulation, filed with this court on September 14, 2011.[1]

7. On September 27, 2011, Debtor and Buyer filed the Assignment Motion. The Ming Plaza Lease is identified in Exhibit A to the Assignment Motion as among the leases sought to be assumed and assigned to Buyer. The Assignment Motion makes no specific reference to the Stipulation.

---

[1] Even though the Sale Order (at Paragraph 28) contemplated that orders approving the assumption and assignment of leases could be effectuated by "a separately filed motion or stipulation," and the Stipulation was filed with a proposed order in accordance with Local Bankruptcy Rule 9021-1(b)(2), for reasons unknown to Landlord, such order was not entered.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

823937.01/SF

-3-
LIMITED OBJECTION TO FIRST OMNIBUS MOTION FOR AN ORDER
AUTHORIZING ASSUMPTION AND ASSIGNMENT, ETC.

8.  It is well-established that the Debtor bears the ultimate burden of presentation and persuasion that a lease of nonresidential real property is one subject to assumption and that all requirements for assumption and assignment have been met.  See, e.g., In re Rachels Industries, Inc., 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); In re Memphis-Fridays Associates, 88 B.R. 830, 840-841 (Bankr. W.D. Tenn. 1988); see also Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309-1310 (5th Cir. 1985); In re Airlift International Inc., 761 F.2d 1503, 1508 (11th Cir. 1985).

## ARGUMENT

## THE STIPULATION GOVERNS THE CURE AMOUNT DUE WITH RESPECT TO THE MING PLAZA LEASE

Bankruptcy Code section 365(b)(1)(A) provides that unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will promptly cure those defaults, it cannot assume the lease.  As on court has held, "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption."  In re Bon Ton Restaurant & Pastry Shop, Inc., 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); accord, In re Valley View Shopping Center, L.P., 260 B.R. 10, 25 (Bankr. D. Kansas 2001).

Here, Debtor's Assignment Motion acknowledges the obligation to cure existing monetary defaults under the leases to be assigned.  (Debtor's Assignment Motion at ¶¶ 16-17.)  According to Exhibit A to the Assignment Motion, the "cure amount" purported to be due upon assumption of the Ming Plaza Lease is $6,000.12.  No breakdown of this amount is provided.

In the Stipulation, filed September 14, 2011, Debtor and Buyer agreed that the cure amount due upon assumption of the Ming Plaza Lease, including unpaid September 2011 rent and charges, are the sum of $6,657.74.  There is no justification for departure from the previously stipulated cure amount, which should be considered an admission of the correct amount due as of September 14, 2011.

Debtor should be required to pay the sum of $6,657.74 as the "cure" required by Bankruptcy Code section 365(b)(1)(A), together with any further sums that accrue and remain

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

823937.01/SF

-4-
LIMITED OBJECTION TO FIRST OMNIBUS MOTION FOR AN ORDER
AUTHORIZING ASSUMPTION AND ASSIGNMENT, ETC.

unpaid prior to the hearing on Debtor's Assignment Motion, including October 2011 rent and charges.

### THE ASSET PURCHASE AGREEMENT IMPROPERLY ATTEMPTS TO EXCLUDE LIABILITY FOR EXPENSE ADJUSTMENTS UNDER THE <u>MING PLAZA LEASE</u>

The trustee (or debtor-in-possession) may assign an unexpired real property lease <u>only if</u> adequate assurance of future performance by the assignee of such [] lease is provided, whether or not there has been a default in such [] lease." (11 U.S.C. § 365(f)(2)(B).)  Accordingly, Landlord is plainly entitled to adequate assurance of the proposed assignee's future performance under the Lease.

Bankruptcy Code section 365(b)(3)(C) provides that the assumption and assignment of a shopping center lease "is subject to all the provisions thereof…"  As with most modern "triple net" leases, Debtor's Ming Plaza Lease provide for the monthly payment of the tenant's pro-rata share of certain expenses (common area maintenance expenses, insurance, taxes, etc.) based on budgeted amounts, subject to later reconciliation based on actual expenses incurred.  (<u>See</u>, <u>e.g.</u>, Sections 2.02, 8.01, 11.03 of Ming Plaza Lease.)

Here, Section 1.3(a) of the Asset Purchase Agreement seeks to bifurcate the tenant's expense reimbursement obligations, by limiting the Buyer's obligations to "[each] obligation or liability of Seller which obligation or liability arose and incurred in the ordinary course of business *from and after the Petition Date*, including, without limitation, all post-petition operating expenses of Seller," excluding professional fees.  (Emphasis added.)

Since year-end expense adjustments for 2011 will not be concluded until sometime in early 2012, there is no pending default with respect to such obligations.  Nevertheless, by purporting to exclude Buyer's liability for such expense obligations in the Asset Purchase Agreement, Landlord is not receiving adequate assurance that those obligations will be paid when billed in the future.  In order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), and ensure that the assumption of each of the leases "is subject to all the provisions thereof…" (11 U.S.C. § 365(b)(3)(C)), either Debtor must make arrangement for such payment by establishment

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

823937.01/SF

-5-
LIMITED OBJECTION TO FIRST OMNIBUS MOTION FOR AN ORDER AUTHORIZING ASSUMPTION AND ASSIGNMENT, ETC.

of a segregated, reserve account for that purpose or Buyer, as the proposed assignee, must have responsibility for such as yet unbilled obligations (and, conversely, receive the benefit of any credits) even though future billings may include expenses that accrue prior to the Petition Date. Buyer previously agreed to assume such liabilities in Paragraph 5 of the Stipulation, notwithstanding the terms of the Asset Purchase Agreement.

As the bankruptcy court noted in In re Washington Capital Aviation & Leasing, supra, 156 B.R. at 175 fn.3:

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease occurring after such assignment." A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. See Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance ... does not discharge any duty or liability of the delegating obligor")). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

See also In re Rickel Home Centers, Inc., 209 F.3d 291, 299 (Adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach.")

As a matter of law, however, the Debtor is not entitled to the benefits and protections of Section 365(k) where the debtor does not assume and assign the lease *cum onere* – with all benefits and burdens. American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76 (3d Cir. 1999). In particular, where an agreement between the debtor and assignee attempts to limit the obligations assumed by the assignee only to obligations arising after a fixed date (e.g., the petition date, a transaction closing date, etc.), there has not been a complete assignment and the debtor is not entitled to the protections of Section 365(k). Id. at 81.

For these reasons, in order to provide adequate assurance of future performance, Debtor and Buyer must make an adequate provision for future expense adjustments under the Ming Plaza Lease.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

823937.01/SF

-6-
LIMITED OBJECTION TO FIRST OMNIBUS MOTION FOR AN ORDER
AUTHORIZING ASSUMPTION AND ASSIGNMENT, ETC.

### DEBTOR HAS FAILED TO PROVIDE FOR ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF INDEMNIFICATION OBLIGATIONS

In addition to the monetary obligations that Buyer must satisfy under Section 365 of the Bankruptcy Code, Debtor's Ming Plaza Lease provides that the tenant must indemnify and hold the landlord harmless with regard to events or incidents that may have occurred prior to any assignment, but which are not made known to the landlord, Debtor or any assignee until after the assignment. (See, e.g., Section 11.03 of Ming Plaza Lease.) The requirement of adequate assurance of future performance is not limited to monetary obligations. See, e.g., In re Rachels Industries, Inc., supra, 109 B.R. at 803.

Accordingly, in order to cure possible pre-assignment non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Ming Plaza Lease, either (a) the Buyer must expressly required to assume all responsibility for any and all such claims, notwithstanding Section 1.3(a) of the Asset Purchase Agreement, or (b) Debtor must be required to demonstrate or obtain adequate insurance (by maintenance of coverage, purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations. Such claims for indemnity could include claims for personal injury occurring at the leased premises where a landlord is joined as a party to a lawsuit, damage and destruction of property by Debtor or their agents or employees, or claims for environmental damage or clean up.

### CONCLUSION

For the foregoing reasons, Debtor's Assignment Motion should be granted as to the Ming Plaza Lease consistent with the terms of the Stipulation and Bankruptcy Code section 365, including assumption of all potential liabilities thereunder.

Dated: October 4, 2011

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: */s/ William W. Huckins*
WILLIAM W. HUCKINS
Attorneys for Ming Plaza, L.P.

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

823937.01/SF

-7-
LIMITED OBJECTION TO FIRST OMNIBUS MOTION FOR AN ORDER
AUTHORIZING ASSUMPTION AND ASSIGNMENT, ETC.

| In re: Hyman Family, L.P. dba Susie's Deals | CHAPTER 11 |
|---|---|
| | Case No. 6:11-bk-20827-WJ |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Allen Matkins Leck Gamble Mallory & Natsis LLP, Three Embarcadero Center, 12th Floor, San Francisco, CA 94111.

A true and correct copy of the foregoing document described as **Limited Objection To First Omnibus Motion of Debtor and Debtor-In-Possession and Buyer DRLY, Inc. For An Order Authorizing The Assumption and Assignment of Executory Contracts And Leases, etc.** will be served or was served **(a)** on the judge in chambers in the form and manner required by the LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ["NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 4, 2011,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

| | |
|---|---|
| Brian L Davidoff | bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com, jreinglass@rutterhobbs.com |
| David B Golubchik | dbg@lnbrb.com |
| Everett L Green | everett.l.green@usdoj.gov |
| Steven T Gubner | sgubner@ebg-law.com, ecf@ebg-law.com |
| Krikor J Meshefejian | kjm@lnbrb.com |
| Claire Shin | cshin@rutterhobbs.com |
| United States Trustee | ustpregion16.rs.ecf@usdoj.gov |
| Brian D Huben | brian.huben@kattenlaw.com |
| Ian S Landsberg | ilandsberg@landsberg-law.com |
| Maurice Wainer | mrwainer@swmfirm.com |

❑    Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On **October 4, 2011,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Via FEDEX**
The Honorable Wayne Johnson
United States Bankruptcy Court
3420 Twelfth Street, Courtroom 302
Riverside, CA 92501-3819

Debtor
Hyman Family L.P.
620 S. Wanamaker Avenue
Ontario, CA  91761

**U.S. Mail**
Attorney for Debtor
David B. Golubchik
Levene Neale Bender Rankin & Brill LLP
10250 Constellation Blvd., Ste. 1700
Los Angeles, CA  90067

❑    Service information continued on attached page

| In re: Hyman Family, L.P. dba Susie's Deals | CHAPTER 11 |
|---|---|
| | Case No. 6:11-bk-20827-WJ |

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** *(indicate method for each person or entity served)*: Pursuant to F.R.Civ.P.5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

❑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 4, 2011 | Cynthia D. Lynch | */s/ Cynthia D. Lynch* |
|---|---|---|
| Date | Type Name | Signature |